RAMÓN MONTANER, MANAGER, ETC., Appellant, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; RAMÓN RODRÍGUEZ, Employer, and AUREA NATAL, ETC., Claimants.

No. 185.—Argued April 29, 1940.—Decided July 26, 1940.

*George A. Malcolm, Attorney General, E. de Aldrey, Assistant Attorney General, and Victor J. Vidal González, Legal Adviser of the State Insurance Fund,* for appellant. *M. León Parra* for respondent. *Víctor M. Sánchez Fernández* for the employer. *Virgilio Brunet* for claimants.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This appeal was sustained by a judgment of March 12, 1940. Then the claimants through their counsel presented such a well-reasoned motion for reconsideration that it made us doubt whether we had correctly interpreted the facts and the law. The judgment was set aside and the case reopened. The counsel for the State Insurance Fund and that for the claimants reargued the case orally, and also submitted extensive briefs in support of their respective positions. Having had the benefit of their views—submitted before and after the judgment of March 12—we considered the matter

further, and we have reached the same conclusion as in our former decision, namely, that the policy held by the employer does not cover the accident. In setting forth the facts we shall confine ourselves to a statement of those which we regard as indispensable for a proper determination of the question.

From the record it appears that Ramón Rodríguez, an employer, in 1936–37 applied for coverage for a permanent business of transportation and submitted a report on wages and on the four trucks which he operated, and on May 22, 1937, the proper policy was issued to him, to cover the balance of the year, under classification 7219, transportation business. A similar action was taken the following year, 1937–38. On August 29, 1938, the employer informed the Chief of Insurance of the State Fund that for the year 1938–39, he had ceased to be the owner of the trucks mentioned in the policies pertaining to previous years and that he would engage in the business of contractor of public works, and he applied for coverage for a contract which he had just obtained for the transportation of 15,956 drums of asphalt on the highways of Puerto Rico, stating that he proposed to employ twenty workmen with a payroll amounting to $1,357; whereupon the State Fund issued to him a policy covering that operation.

The employer also engaged in the transportation of gravel from Iriarte's quarry to a certain insular highway, and the workman Juan Hernández was killed while employed in such work. After the accident occurred, the employer sought to have the policy extended so as to include the contract for the transportation of gravel. The case having been reported, it was investigated by the State Insurance Fund, and the Manager of the Fund decided that the policy issued to the employer did not cover the accident which caused the death of the workman. An appeal was taken to the Industrial Commission, which reversed the decision of the manager. The latter presented a motion for reconsideration and the

commission denied the same. Thereupon the manager instituted the present proceeding for review.

In support of the ruling of the commission, the claimants urge that the first paragraph of section 23 of Act No. 45 of 1935 (Sess. Laws, p. 250) provides that the Manager of the State Insurance Fund shall prepare a schedule of classifications according to the occupations or industries to which the act refers; and that said officer, in obedience to the legislative mandate, fixed, for the year 1938–39, classification No. 7219 as follows:

"TRANSPORTATION.—Business of....By truck, excluding express. Including cartmen, chauffeurs, stablemen, shop and garage employees, etc."

That on September 8, 1937, there was issued, pursuant to law, Administrative Bulletin No. 547, Rule IX (3) of which provides:

"The operations which are to be the object of the insurance shall be stated in the policy in the identical form used in the schedule of classifications, with the proper numbers and types."

That what the employer sought to insure in this case was his "transport operation" and that in the schedule of classifications which had been prepared by the Manager of the Fund said operation was described, under No. 7219, thus:

"TRANSPORTATION.—Business of....By truck, excluding express. Including cartmen, chauffeurs, stablemen, shop and garage employees, etc."

That this being so, the transport operation *should have been stated* in the policy in the *identical form* used in the schedule of classifications and not as was done, without any legal authority, by the manager.

And that as there is involved a state insurance, established for the benefit of the workmen, the policy should be construed as if it had been issued in conformity with the law and the regulations, in which case there is no doubt that it covers the accident.

In further support of their position, the claimants invoke the third rule of Administrative Bulletin No. 547, which provides that "Each premium rate offers complete coverage for the risks described in the corresponding classification," and they go into an extensive explanation of the meaning of the term "operations," used in the rules, to conclude that here the transportation of gravel was not a distinct operation from the transportation of petroleum drums, and hence that no extension of the policy was necessary, that is, that here from the beginning to the end there was only a single "operation": that of transportation.

Claimants' argument, which we have reproduced only in substance, and in which they have included citations and examples more or less pertinent, is persuasive.

However, the true facts and the law itself as construed by the decisions justify the action taken by the manager in issuing the policy in the manner he did at the request of the employer himself in this case.

Recently, in *Miró v. Industrial Commission*, 56 P.R.R. 121, this court, speaking through Mr. Justice Wolf, said:

"From the Workmen's Compensation Act (Act No. 45 of 1935, p. 250) it will be seen that there are two kinds of employers: permanent and temporary. The permanent employers, who do the same kind of work year after year, send to the State Insurance Fund, on or before July 15 of each year, a copy of the total payroll of their business for the previous fiscal year. The Manager of the Fund classifies the employees according to the work they do. Then, taking that previous payroll as a basis, he imposes the rates which he has fixed upon the various classifications, assuming for the moment that the payroll for the next year will be exactly like the previous one. At the end of the fiscal year, the Manager once more has the payroll before him. He compares the one of the previous year with the present one. Any difference in favor of the Fund is collected from the employer; if it is in his favor it is credited to his account against future premiums. And this payroll, besides being a basis for the liquidation of the insurance which has been in effect for the year just expired, will once again serve as basis for the collection of premiums for the coming year.

"The temporary or occasional employer is in a different position. When he is about to start work he goes to the Manager and submits an estimate of his payroll for the duration of the work. Rates are imposed upon him. When the work is finished he submits the payroll he has really paid and a liquidation is made.

"* * * * * * * *

"The temporary employer, as we have said before, is the one whose work is not regular year after year, and whose payrolls are filed on July 15th of every year, but who files an estimated payroll when he begins a job, which is liquidated when he finishes it. His policy does not run with the fiscal year, but for the duration of the work. It follows that Miró is a temporary employer."

The present case is clearly that of a temporary employer who resorts to the State Fund for insurance against the risk involved in a single piece of business within the general business of transportation: an isolated operation within the general operation of transportation by truck. The manager in such case has at least implied power to issue a limited policy, and such policy once issued can only be enforced in accordance with its own terms.

The facts established reveal that there is involved an employer who knew the law. He was the owner of a number of trucks and he engaged in the general business of transportation for two years, and he obtained from the State Insurance Fund, upon payment of the corresponding premiums—both temporary and final—the broad policy authorized by the law and the regulations.

He discontinued said business and engaged in that of a contractor and so advised the Fund. When he obtained a special contract of transportation, he applied to the Fund and an insurance policy was issued to him on the basis of the probable wages to be paid. It was only natural and proper that, each time he obtained a new contract, he should again resort to the Fund for coverage by extending his policy on the basis of the probable wages that he would have to satisfy. That was the interpretation which the employer himself gave to the law and the regulations in this case. As

we have previously stated, he tried to obtain the extension, but when he made the attempt nothing could be done, as the accident had already occurred.

To interpret the law and the regulations otherwise, would be tantamount to giving an employer, who upon reporting a single contract of transportation should obtain a policy securing compensation for labor accidents that might occur under the contract, the premium to be computed on the basis of the probable wages to be paid, unlimited authority enabling him, in case he obtained other contracts during the existence of the policy, to act as if his liability were covered; and this would be manifestly unjust to the State Insurance Fund, because it would make it discretionary on the part of the employer to make a further payment on premiums only in the event that an accident should occur that would compel him to report the wages under the contract comprised in the accident.

For the foregoing reasons and those set forth in our former opinion, wherein the facts were stated more in detail and a great portion of the opinion of the Industrial Commission was transcribed, the appeal must be sustained and the decisions of the Industrial Commission complained of must be reversed.

Mr. Justice De Jesús took no part in the decision of this case.